UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                      Criminal Case No. 02-80586
                                                                                        Civil Case No. 07-11248
                                                                                        Honorable Patrick J. Duggan

D-10 RONALD LUPO,

    Defendant.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 18, 2007.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Presently before the Court is Defendant Ronald Lupo's motion pursuant to 28 U.S.C. § 2255 to vacate and set aside his conviction entered on January 31, 2005. In his motion, Lupo contends that his appellate counsel was ineffective for failing to raise on appeal an issue regarding the sufficiency of evidence to support his conviction. For the reasons that follow, Lupo's motion is denied.

**I.    Background**

On February 2, 2003, a federal grand jury sitting in the United States District Court for the Eastern District of Michigan handed down a thirty-six count Superseding

1

Indictment against ten individuals, including but not limited to: (1) William J. Hudson, owner/operator of Hudson Construction, Inc. ("HCI"); (2) Raymond Contesti, Superintendent of Clintondale Community Schools ("CCS"); (3) John Gardiner, Superintended for East Detroit Public Schools ("EDPS"); and (4) Lupo, a retired Macomb County Sheriff Inspector, who was a close friend and business associate of Constesti. With respect to Contesti and Lupo, "[t]he Superseding Indictment generally alleged that Lupo and Contesti, in return for their assistance in securing and maintaining HCI's various contracts with CCS, and with the promise to use their influence to secure contracts for HCI, demanded that Hudson and HCI pay to them a percentage of all profits HCI received from its contracts with EDPS and CCS." *United States v. Gardiner*, 463 F.3d 445, 452 (6th Cir. 2006).

Count One of the Superseding Indictment charged Lupo, Hudson, Contesti, Gardiner, and four other defendants with conspiracy to commit racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). Lupo also was charged with Hudson and Contesti in Count Two of the Superseding Indictment with conspiracy to affect commerce under color of official right, in violation of 18 U.S.C. § 1951. Lupo and Contesti were charged with four counts of interference with commerce by extortion and aiding and abetting, in violation of 18 U.S.C. §§ 1951 & 1952 (Counts Three, Four, Five, and Six). Finally, in Count Thirty-Six, Lupo was charged with making false, fictitious, or fraudulent statements in violation of 18 U.S.C. § 1001.

Except for Gardiner and Lupo, all of the individuals named in the Superseding Indictment pleaded guilty prior to trial. A jury trial commenced against Lupo and Gardiner on June 22, 2004, and concluded two weeks later with the jury finding Gardiner guilty of the charges against him and Lupo guilty of all charges, except the false statement charge. On January 31, 2005, this Court sentenced Lupo to imprisonment for a term of 80 months on each of the counts for which he was convicted, to run concurrently.

Lupo thereafter filed a direct appeal in which he challenged the version of the Sentencing Guidelines used at sentencing, the reasonableness of his sentence, the introduction at trial of statements regarding his alleged Mafia connections and the results of a polygraph test, and the trial court's denial of his motion to suppress and motion for severance. In a published opinion addressing Lupo's and Gardiner's appeals, issued on July 26, 2006, the Sixth Circuit affirmed both defendants' convictions on all grounds, affirmed Lupo's sentence, but vacated Gardiner's sentence and remanded for resentencing. *Gardiner*, 463 F.3d at 473. On March 22, 2007, Lupo filed the pending motion.

## II. Lupo's Arguments

Lupo argues that the judgment against him must be vacated because there was insufficient evidence to demonstrate his knowledge of the alleged conspiracies. Specifically, Lupo contends that there was no evidence establishing his knowledge that bribes and favors were being exchanged to secure construction contracts for HCI with EDPS or CCS. Lupo contends that his appellate counsel provided ineffective assistance

3

because she failed to raise a sufficiency of the evidence claim, "the most basic legal insufficiency in [his] trial." (Def.'s Mot. at 2.)

## III. Applicable Standard for Relief Under 28 U.S.C. Section 2255

A movant is entitled to relief under 28 U.S.C. Section 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. In order to prevail as to alleged constitutional errors, a defendant must establish "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citation omitted). Where the defendant alleges a non-constitutional error, he must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id*. (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

## IV. Analysis

Lupo asserts ineffective assistance of appellate counsel as the ground for vacating his conviction. Courts apply a two-part test to evaluate an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

4

> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The Sixth Circuit has instructed that in assessing counsel's performance, courts must consider "whether 'counsel's representation fell below an objective standard of reasonableness,' as measured by 'prevailing professional norms.'" *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997) (quoting *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064-65)).  "To establish prejudice, a defendant must demonstrate a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 1155 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068)).

Even assuming that Lupo's counsel provided deficient assistance in failing to raise an insufficiency of the evidence claim on appeal, there can be no doubt that the alleged error did not prejudice Lupo.  This is because the Sixth Circuit, despite counsel's failure to timely raise the claim, considered the claim and concluded that it lack merit.  As the appellate court noted in its opinion:

> At oral arguments, Defendant Lupo's attorney requested
> permission to file a motion to join Defendant Gardiner's
> appeal of his sufficiency of evidence and prosecutorial
> misconduct claims.  We decline to grant this motion due to its
> untimeliness, but note that even if we were to grant Lupo's
> motion, his claims would still fail on the merits for the same
> reasons that they are denied as to Defendant Gardiner.
> Specifically, we would find that the evidence adduced at trial
> is sufficient to establish conspiratorial agreement . . .

*Gardiner*, 463 F.3d at 457 n.6.  This evidence, as summarized by the Sixth Circuit,

included the following:

> During that meeting [where Contesti introduced Hudson to Lupo], *Lupo* and Contesti indicated that they wished to become partners with HCI *for construction projects financed by bond issues*, and that they wanted Hudson to split HCI's eight percent profits with them. *In return, Lupo* and Contesti would *bring various contracts to the table for HCI, which included other bond issues for CCS* as well as work for Mt. Clemens General Hospital. Lupo and Contesti were both members of the Board at Mt. Clemens General Hospital.

*Id*. at 454 (emphasis added). Thus despite counsel's alleged error, the Sixth Circuit considered and rejected Lupo's insufficiency of the evidence claim. This Court also finds sufficient evidence to support Lupo's conspiracy convictions.

As the *Gardiner* court summarized the evidence necessary to support a RICO conspiracy conviction:

> [W]e must first determine if a conspiracy existed and then whether the defendant was a member of the conspiracy. A defendant's agreement to participate in the RICO conspiracy may be inferred from his acts. In establishing the existence of a conspiracy to violate federal law, the government need not prove a formal agreement, because a tacit or mutual understanding among the parties is sufficient to show a conspiratorial agreement. A conspirator need not have agreed to commit every crime within the scope of the conspiracy, so long as it is reasonable to infer that each crime was intended to further the enterprise's affairs. Moreover, each conspirator does not have to participant in every phase of the criminal venture, provided there is assent to contribute to a common enterprise.

463 F.3d at 457 (internal citations and quotation marks omitted). In his motion, Lupo concedes that there was sufficient evidence establishing a conspiracy between Contesti

and Hudson concerning CCS and Hudson, Gardiner, and others concerning EDPS. (Def.'s Mot. at 2.) Lupo simply denies having a role in the conspiracy or any knowledge of it. There was evidence introduced at trial to demonstrate otherwise.

First, Lupo and Contesti were good friends and business partners and Lupo knew that Contesti was the Superintended of CCS. Even if Lupo did not believe that he was in a position to influence any CCS bond issues, he clearly was aware of his friend's and business partner's influence. Contesti introduced Lupo to Hudson, and Contesti and Lupo thereafter told Hudson that they wanted to become silent partners in the revenues that HCI was generating from its "bond issues." (Def.'s Mot. Ex. 2 at 78-79.) At the time of their meeting, CCS had approved one bond issue and a second bond issue was being considered. (*Id*. at 79 & 89.) Contesti, Lupo, and Hudson agreed that, in exchange for a share of the eight percent manager fee HCI received from the school districts on the various bond issues, Contesti and Lupo would "bring various contracts to the table for [HCI]." (*Id*. at 79-80.) Viewing this evidence in a light most favorable to the government, a rational trier of fact could have concluded beyond a reasonable doubt that Lupo understood that he and Contesti were to receive regular cash payments, in exchange for (at least) Contesti using his position to obtain CCS contracts and other contracts for HCI. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (establishing that, when reviewing a claim alleging that the evidence at trial was insufficient for a conviction, the court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.)

Further, in addition to regular cash payments from HCI ultimately totaling $600,000, Lupo received approximately $300,000 worth of home improvements from HCI, without charge. *Gardiner*, 463 F.3d at 455. During a meeting between Hudson and Lupo in the Spring of 2002, after checking to determine if Hudson was wearing a wire, Lupo told Hudson in a whisper that, if questioned, he should say that Lupo paid for his home improvements, even though this was untrue. *Id.* In his reply brief, Defendant argues that this evidence, at most, only supports a charge of conspiracy to evade the income tax laws. (Def.'s Reply at 4.) The Court respectfully disagrees, particularly as Lupo referred to the free construction work but not the cash payments he received from HCI in his instruction to Hudson. This conversation provides circumstantial evidence from which a reasonable jury could conclude that Lupo knew that there was an unlawful purpose behind his receipt of this free construction work.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to vacate judgment pursuant to 28 U.S.C. § 2255 is **DENIED**.

            s/PATRICK J. DUGGAN
            UNITED STATES DISTRICT JUDGE

Copies to:
Carl J. Marlinga, Esq.
AUSA John C. Engstrom